IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELITE WHEEL DISTRIBUTORS, INC.,

    Plaintiff,                                  Case No.:

vs.

WHEEL PROS, LLC,

    Defendant.
_____/

**COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, Elite Wheels Distributors, Inc. ("Plaintiff"), by and through its undersigned attorneys, hereby sues Defendant, Wheel Pros, LLC ("Defendant"), and in support thereof, respectfully states as follows:

**Nature of the Action; Jurisdiction, Venue, & Parties**

1. This is an action for fraudulent misrepresentation, negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing, under Florida law.

2. Plaintiff is and, at all relevant times, was a corporation incorporated under the laws of the State of Florida, United States, having its principal place of business in the State of Florida, United States.

3. Defendant is a limited liability company incorporated in the state of Delaware, with a principal place of business in Greenwood Village, Colorado. None of Defendant's members are Florida residents, including per its official filings with the State of Florida.

1

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), based on complete diversity of citizenship between Plaintiff and Defendant, and because the amount in controversy in this action exceeds $75,000, USD.

5. This Court has personal jurisdiction over Defendant pursuant to the Florida Long-Arm Statute, § 48.193. Defendant conducts business inside Florida state lines, maintains a Florida registered agent, and is registered with the State of Florida to conduct business in Florida. Moreover, Defendant committed breaches, acts, and omissions which caused injury to Plaintiff in Florida; as well, this action arises out of a contract between the parties that includes a provision agreeing to this Court's jurisdiction over the claims and parties.

6. Venue is proper in this Court pursuant to either of 28 U.S.C. § 1391(b)(1) or (2), and 28 U.S.C. § 1391(c)(2).

## Facts Common to All Counts

7. Plaintiff is a Florida-based designer, manufacturer, and distributor of wheels and wheel accessories, and a distributor of tires, in the automobile aftermarket industry.

8. Defendant is a fellow automobile aftermarket industry participant and designer, manufacturer, and distributor of wheels and wheel accessories, and is a competitor of Plaintiff.

9. Plaintiff premiered its XF Offroad line of custom-designed, branded wheels, primarily marketed for and to truck owners, circa 2017.

10. Plaintiff enjoyed strong and growing revenues from its XF Offroad line during the following years.

11. Circa 2018, Plaintiff determined to expand its XF Offroad line by creating the XF Flow Forged branded line of wheels, manufactured via a flow forging process (this manufacturing is also sometimes called a flow forming process as well as a rotary forging process).

    a. Wheels are manufactured in Plaintiff and Defendant's industry generally via casting, forging, and flow-forging processes/technologies, with the latter – flow-forging – representing a hybrid form of the former two processes.[1]

    b. Plaintiff offered cast and forged wheel lines prior and contemporaneous to its introduction of XF Flow Forged, its first wheel line developed/manufactured via the flow-forging process.

---

[1] TSW – an industry participant purchased by Defendant during the relevant time period, as discussed further below – describes this process as: "The rim of the wheels is forged at high pressure while the wheel is spun at high speed. This alters the molecular structure and enhances the strength of the alloy. The benefit is a much lighter weight than a regular cast wheel. Most importantly, the weight saving is in the outer rim of the wheel which dramatically reduces rotational mass and enhances vehicle performance." *See* https://www.tsw.com/explore/flow-form-technology-wheels.php#:~:text=Flow%20Form%20Technology&text=The%20rim%20of%20the%20wheels,than%20a%20regular%20cast%20wheel.

12. Plaintiff decided to develop and sell the XF Flow Forged line of flow-forged wheels as part of its XF Offroad line because Plaintiff identified that there was an underserved, underdeveloped market in its industry for truck owners who may want to purchase flow-forged wheels.

    a. Specifically, Plaintiff recognized that as flow-forged wheels are lighter and stronger than traditional cast wheels, and trucks are heavier than cars and therefore benefit from stronger wheels, truck owners would be a natural fit for flow-forged wheels.

    b. Moreover, circa 2018, Plaintiff identified that there were limited offerings of flow-forged wheel lines in the industry for truck owners,[2] to whom Plaintiff was already marketing its XF Offroad line of wheels, and so an XF-branded flow-forged wheel line was a natural fit for Plaintiff's product portfolio.

13. Plaintiff's XF Flow Forged wheels enjoyed substantial and growing revenues once they hit the marketplace, with sales of approximately $2.068 million in 2019 and $4.433 million in 2020.

---

[2] That said, Plaintiff identified at this same time that many other industry participants were offering flow-forged wheels for passenger vehicles, using terms such as "rotary forged," "hybrid forged," "compression forged," "flow forged," and others, which such terms for flow-forged wheels are still in regular industry use through the present day.

14. At some point in 2019, Plaintiff's XF Flow Forged line of wheels, and accompanying strong revenues, came to the attention of Defendant.

15. At some point in 2019, Defendant decided to try to shut down Plaintiff's XF Flow Forged line of wheels.

16. In February 2020, Defendant filed a lawsuit against Plaintiff and an affiliated entity in Florida court, *Wheel Pros, LLC v. Elite Wheel Distributors, Inc. et al.*, Case No. 20-002805 (Miami-Dade Circuit Ct., filed Feb. 12, 2020) (the "2020 Case"),[3] alleging, in essence, that Plaintiff's XF Flow Forged wheels[4] were being improperly marketed as "forged" wheels notwithstanding their manufacture pursuant to a flow forging process, and therefore, among other things, Plaintiff was allegedly undercutting Defendant's efforts to sell its "legitimate" and "genuinely forged" wheels.

17. The parties to the 2020 Case ultimately entered into a September 2020 Settlement Agreement (the "Agreement"), a true and correct copy of which is attached hereto as Exhibit A, and pursuant to the Agreement, Defendant voluntarily dismissed the 2020 Case in November 2020.

18. The Agreement included an acknowledgement from Defendant that settlement of the 2020 Case and Plaintiff's performance of

---

[3] The affiliated entity was XF Offroad, Inc.; all claims against Defendant that entity has or may have relating to the Agreement presently belong to Plaintiff.
[4] A line of wheels that was also and later marketed as XF Flow wheels by Plaintiff in connection with events pled herein.

5

its duties under the Agreement did not constitute any admission of liability by Plaintiff arising out of or relating to the 2020 Case. *See* Agreement, § 1(l).

    a. Plaintiff determined to settle the 2020 Case in material part to focus on the growth of its company and avoid protracted and costly litigation with a much larger and better funded competitor, Defendant, which Plaintiff understood and understands is owned by a private equity firm, Clearlake Capital Group, that was recently ranked by Private Equity International as the eighth largest private equity firm in the world.

19.    The Agreement included the following relevant terms[5]:

    a. A statement in the Agreement Recitals that Plaintiff's XF Flow Forged line of wheels is "manufactured pursuant to a flow forging process" and Defendant has alleged in the 2020 Case that such a flow forging manufacturing process results in wheels that "are not forged wheels" per a private professional association in the industry. Agreement, Recital D.

---

[5] In addition, the Agreement provides that it "shall be governed by and construed in accordance with" Florida law, and that the parties agree to submit to the exclusive jurisdiction of a list of courts, including this Honorable Court, "for any matter relating in any way to" the Agreement. *See* Agreement, § 5.

b. A statement in the Recitals that Defendant "intends to bring and is bringing demands and/or claims similar to those alleged [against Plaintiff in the 2020 Case] against other wheel industry participants utilizing the term 'forged' in a manner that [Defendant] believes is actionably false and misleading." *Id.* Recital E.

c. Plaintiff's agreement to cease using the term "forged" for its current XF Flow Forged line of wheels, and in associated marketing, packaging, social media, and website materials, including via (1) placing stickers on its existing XF Flow Forged inventory and (2) ceasing to manufacture or distribute future XF Flow Forged wheels with the word "forged" on the relevant wheel and marketing, packaging, social media, and website materials. *Id.*, § 1(a)-(j).

d. Defendant's representation - as part of Agreement Section 1(k), which is introduced by a statement in bold letters "Wheel Pros represents and/or agrees as follows," *see* Agreement at 3 – that the 2020 Case is "the first but not the only action Wheel Pros is undertaking so as to eliminate the use of the term 'forged' in connection with wheels in the wheel industry that Wheel Pros believes were not manufactured in a manner that conforms to [the private

7

        association's] uniform nomenclature for 'forged' wheels. [Plaintiff and its affiliate] have not been and are not being singled out by [Defendant] via its filing of [the 2020 Case]." *Id.*, § 1(k).

           i. This subsection also provides an option for Plaintiff to confirm, every 6 months over the following 18 months, that Defendant's "efforts to eliminate" improper use of the term "forged" are "ongoing and directed at multiple industry participants besides [Plaintiff]." *Id.*

    e. A listing of other specific industry participants and associated wheel lines that Plaintiff affirmatively identified to Defendant in the Agreement as marketing and selling wheels "that include the term 'forged'" via manufacturing processes akin to those used for XF Flow Forged wheels. *Id.* These wheel lines included, notably, Black Rhino Hard Alloys and their line of "rotary forged" wheels. *Id.*

    f. A statement that Defendant will, at its discretion, "take whatever course of action it deems justified . . . to eliminate the misleading use of the term 'forged' in connection with wheels in the wheel industry" that it believes are improperly using the term "forged," followed

    by a statement that Defendant "represents that its actions in the present matter were not motivated by a specific animus towards [Plaintiff and its affiliate]." *Id.*

  g. A statement that all terms in Agreement Section 1 are material settlement provisions, breach of any of which constitutes a material breach of the Agreement. *Id.* at 4-5.

20. Plaintiff complied with its duties under the Agreement.

21. Defendant did not comply with its duties under the Agreement. As one prominent example, beginning roughly 90 days after entering into the Agreement, in and after December 2020, Defendant (1) purchased Just Wheels & Tires Co., Inc d/b/a TSW, which designed and distributed the Black Rhino line of wheels, including Black Rhino's "rotary forged" wheel line named in the Agreement; (2) migrated the Black Rhino brand into Defendant's own collection of wheel brands; and (3) directly marketed and sold Black Rhino "rotary forged" wheels for years thereafter.[6]

  a. In other words, within months if not weeks of entering into the Agreement, Defendant began generating revenue

---

[6] Notably, at some point in early 2023, Defendant purported to rebrand its Black Rhino "rotary forged" wheels as so-called "flow formed" wheels (as well as make similar changes to other Wheel Pros brands such as Cray Wheels), but continued and continues to utilize website product photos with Black Rhino wheels that still display the term "rotary forged" on the wheels themselves (with multiple such photos displaying those "rotary forged" wheels on trucks and not cars). Representative screenshots from and relating to the Wheel Pros and Black Rhino websites are attached hereto as part of Composite Exhibit D.

9

for itself via purchasing one of the very wheel lines named in the Agreement that utilizes the flow-forging process and includes the word "forged" in the wheel brand and on the face of the wheel (with no stickers affixed over the word "forged" thereon), and then marketing and selling that same brand for years afterward.

b. Plaintiff, after discovering that Defendant had purchased and was selling the Black Rhino brand of "rotary forged" wheels after the Agreement was executed, engaged an industry engineering expert to undertake a scientific comparison of one of Defendant's Black Rhino rotary forged wheels and an XF Flow Forged wheel, and confirmed that both of Defendant's and Plaintiff's wheels were manufactured pursuant to the same flow forging manufacturing process. A true and correct copy of that engineering expert's report is attached hereto as Exhibit B.

22. Moreover, Defendant has not otherwise taken steps to "eliminate" the industry's use of the term "forged" in the manner promised in the Agreement. As one example, almost all of the industry participants and associated flow-forged wheel lines listed in the Agreement as fellow alleged offenders are still marketing and selling those same brands using variations on the word "forged," and more such

brands/wheel lines have entered the industry since the September 2020 Agreement date.

23. Meanwhile, Plaintiff's conduct in compliance with the Agreement – including placing stickers atop the word "forged" on its existing inventory of XF Flow Forged wheels and associated packaging and marketing materials; ceasing the manufacture of further XF Flow Forged wheels, and re-purposing the XF Flow Forged brand as XF Flow Formed wheels – resulted in retailer and consumer confusion, and marketplace consternation, skepticism, and apathy for Plaintiff's XF Flow Forged/XF Flow Formed wheel line, ultimately resulting in Plaintiff having to, as of the present day and after extensive efforts to save the XF Flow Forged/XF Flow Formed wheel line via various individualized and specialized marketing efforts and price reductions, shutter that formerly highly profitable wheel line and initiate a write down of its remaining inventory at a substantial loss.

24. In advance of the filing of this Complaint, Plaintiff utilized an experienced expert financial advisory firm, LCG Advisors, to preliminarily evaluate Plaintiff's lost profits for its XF Flow/Flow Forged wheel line resulting from its entry into the Agreement and Defendant's associated conduct.  LCG Advisors has determined, just via a draft preliminary expert analysis (a true and correct copy of which is attached hereto as Exhibit C), that Plaintiff's lost profits associated with its XF Flow/Flow

11

Forged wheel line for the period of November 2020 through February 2024 are: $4,129,960, USD.

25. Plaintiff has also suffered substantial reputational harm and other injuries resulting from its entry into the Agreement and Defendant's associated conduct.

26. Meanwhile, Defendant has since 2020 enjoyed substantial and ongoing revenues and profits from its multiple wheel lines manufactured via the flow forging process, including its Black Rhino Rotary Forged wheels named in the Agreement.

27. Plaintiff has retained KnoxLeib, pllc, to represent it in this action, and is obligated to pay the firm reasonable fees for its services. Pursuant to Section 5 of the Agreement, Plaintiff is entitled to recover its reasonable attorneys' fees and costs incurred in prosecuting this action.

28. In light of all of the above, Plaintiff alleges the following causes of action:

### Count I
### Fraudulent Misrepresentation

29. Plaintiff hereby incorporates the allegations in paragraphs 1 through 28 as if fully set forth herein.

30. This cause of action seeks money damages against Defendant for fraudulent misrepresentation under Florida law.

31. Defendant intentionally made a series of false statements of material fact, in the form of both affirmative misrepresentations and

omissions of material facts that should have been disclosed, as pled and incorporated herein, to Plaintiff, in connection with the parties' entry into and performance under the Agreement.

32. As to each of the false statements of material fact, Defendant either knew the statement was false when it was made or made the statement knowing it was without knowledge of its truth or falsity.

33. In making each of these false statements, Defendant intended for Plaintiff to rely on each such statement, and Plaintiff did in fact rely on each and all of these statements.

34. Plaintiff did not know that each or any of these statements were false at the time it was made, and the falsity of each of these statements was not obvious to Plaintiff. Had Plaintiff known the truth regarding each and any of these false statements, Plaintiff would not have entered into the Agreement and engaged in its resulting conduct pled herein.

35. As a result of these intentional, material false statements made by Defendant with the intention that Plaintiff would rely on them, as well as Plaintiff's actual reliance on each and all of them, Plaintiff suffered substantial damages.

WHEREFORE, Plaintiff respectfully requests this Court enter a judgment against Defendant for all actual and compensatory damages, plus consequential damages resulting therefrom (including disgorgement),

as well as exemplary and punitive damages, in an amount to be determined at trial, as well as interest, costs, attorneys' fees pursuant to Agreement Section 5, and for such other relief as this Court may deem just and proper.

## Count II
### Negligent Misrepresentation

36. Plaintiff hereby incorporates the allegations in paragraphs 1 through 28 as if fully set forth herein.

37. This cause of action seeks money damages against Defendant for negligent misrepresentation under Florida law. including as an alternative to Count I.

38. In connection with entry into and performance under the Agreement, Defendant made a series of statements concerning material facts, as pled and incorporated herein, to Plaintiff, each of which statements it believed to be true at the time but was in fact false.

39. Defendant was negligent in making each of these statements because it should have known that each such statement was false.

40. In making each of these statements, Defendant intended and expected that Plaintiff would rely on that statement.

41. Plaintiff, who was aware that Defendant was in a position to have unique and superior knowledge of Defendant's ability and intention to satisfy its Agreement-related obligations to Plaintiff (and claimed accompanying goals to correct alleged marketing issues in the parties'

industry), justifiably relied on each of these false statements.  Plaintiff would not have agreed to enter into the Agreement and its resulting conduct undertaken herein had Plaintiff known the truth regarding each of these actually false statements made by Defendant.

42. Plaintiff, as a result of these actually false statements on which Defendant intended Plaintiff to rely, and on which Plaintiff did justifiably rely, suffered substantial damages.

WHEREFORE, Plaintiff respectfully requests this Court enter a judgment against Defendant for all actual and compensatory damages, plus consequential damages resulting therefrom (including disgorgement), as well as exemplary and punitive damages, in an amount to be determined at trial, as well as interest, costs, attorneys' fees pursuant to Agreement Section 5, and for such other relief as this Court may deem just and proper.

### Count III
### Breach of Contract

43. Plaintiff hereby incorporates the allegations in paragraphs 1 through 28 as if fully set forth herein.

44. This cause of action seeks money damages against Defendant for breach of contract under Florida law.

45. Plaintiff and Defendant entered into the Agreement circa September 2020.

46. Plaintiff fully performed its obligations under the Agreement.

47.  Defendant materially breached its performance obligations to Plaintiff under the Agreement, as pled herein.

48.  These breaches directly and proximately damaged Plaintiff.

WHEREFORE, Plaintiff respectfully requests this Court enter a judgment against Defendant for compensatory and consequential damages (including disgorgement), in an amount to be determined at trial, as well as interest, costs, attorneys' fees pursuant to Agreement Section 5, and for such other relief as this Court may deem just and proper.

## Count IV
### Breach of the Implied Covenant of Good Faith and Fair Dealing

49.  Plaintiff hereby incorporates the allegations in paragraphs 1 through 28, as if fully set forth herein.

50.  This cause of action seeks money damages against Defendant for breach of the implied covenant of good faith and fair dealing under Florida law.

51.  Plaintiff and Defendant entered into and were parties to the Agreement.

52.  Plaintiff did all or substantially all of the significant things the Agreement required it to do.

53.  Under Section 1(k) the Agreement, Defendant was promised and was required to engage in conduct designed to "eliminate" improper use of the word "forged" by multiple industry participants, as pled in greater detail at paragraph 19(d)-(f) herein.

54. Defendant breached Agreement Section 1(k), as pled herein.

55. All conditions precedent required for Defendant's duties to perform under the Agreement had occurred at the time of these breaches.

56. Defendant's actions and omissions relating to these breached portions of the Agreement as pled herein unfairly interfered with Plaintiff's receipt of the Agreement's benefits.

57. Defendant's conduct, including in connection with Section 1(k) and the Recitals of the Agreement, did not comport with Plaintiff's reasonable contractual expectations under those portions of the Agreement.

58. Plaintiff suffered substantial damages due to Defendant's above-pled conduct.

WHEREFORE, Plaintiff respectfully requests this Court enter a judgment against Defendant for compensatory and consequential damages (including disgorgement), in an amount to be determined at trial, as well as interest, costs, attorneys' fees pursuant to Agreement Section 5, and for such other relief as this Court may deem just and proper.

## **Trial by Jury**

Plaintiff requests trial by jury for all counts herein alleged so triable.

Dated:  April 28, 2023                                    Respectfully submitted,


*/s/ Leighton Leib*                                              */s/ David Knox*
LEIGHTON LEIB                                          DAVID KNOX
Florida Bar No. 011926                                 Florida Bar No. 0093779
lleib@knoxleib.com                                      dknox@knoxleib.com

**KNOX♦LEIB, PLLC**
514 N. Franklin Street, Ste 205
Tampa, Florida 33602
(813) 252-3622

*Attorneys for Plaintiff*