# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ELITE WHEEL DISTRIBUTORS, INC.,

      Plaintiff,

v.                                                                  Case No. 8:23-cv-930-KKM-CPT

WHEEL PROS, LLC,

      Defendant.

_____

## **ORDER**

Elite Wheel Distributors, Inc., and Wheel Pros, LLC, compete in the automobile aftermarket industry for designer wheels. After Wheel Pros sued Elite in state court for deceptive marketing and unfair competition, the parties entered into a settlement agreement. Elite then brought four claims against Wheel Pros relating to the settlement agreement: fraudulent misrepresentation, negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing. Am. Compl. (Doc. 26). Wheel Pros moved to dismiss all four claims. (Doc. 27). Because Elite failed to sufficiently allege its claims, I granted the motion with leave to amend. (Doc. 48).

Elite then amended its complaint, realleging the same four claims. Sec. Am. Compl. (Doc. 53). Wheel Pros moves to dismiss again, arguing that Elite's

revisions do not remedy the deficiencies from before and raising new grounds for dismissal. MTD (Doc. 59). Elite opposes. Resp. (Doc. 62). For the reasons explained below, I grant Wheel Pros's motion in part and dismiss Elite's fraudulent and negligent misrepresentation claims with prejudice. But I deny Wheel Pros's motion as to Elite's two contract claims, which may proceed.

## I.    BACKGROUND[1]

Elite's underlying factual allegations remain largely the same as before. Elite "is a Florida-based designer, manufacturer, and distributor of wheels and wheel accessories, and a distributor of tires, in the automobile aftermarket industry." Sec. Am. Compl. ¶ 7. In 2017, Elite "premiered its XF Offroad line of custom-designed, branded wheels, primarily marketed for and to truck owners." *Id.* ¶ 9. After realizing "strong and growing revenues," Elite "expand[ed] its XF Offroad line by creating the XF Flow Forged branded line of wheels." *Id.* ¶¶ 9–11. These specific wheels were "manufactured via a flow forging process," which uses a hybrid form of the traditional forging and casting processes, the two industry-standard manufacturing methods. *Id.* Flow-forged wheels "are lighter and stronger than traditional cast wheels," which specifically benefits trucks that need stronger wheels due to their

---

[1] The Court accepts all the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

heavier weight. *Id.* ¶ 12(a). Elite's flow-forged line of wheels generated revenues of "approximately $2.068 million in 2019, and $4.433 million in 2020." *Id.* ¶ 13.

On September 30, 2019, Wheel Pros—a competitor—sent Elite a letter representing the following:

> (1) [Wheel Pros] believed, in light of the view of a private industry association, that there are two (and not three), wheel manufacturing methods in the industry – "cast" and "forged"; (2) [Wheel Pros] had concluded via testing that [Elite's] XF Flow Forged wheels "are manufactured by a casting process" such that "[t]he representation that they are 'forged' is misleading, unfair, and deceptive"; (3) [but that] "all wheels manufactured and marketed by Wheel Pros as forged are truly forged aluminum alloy products"; and (4) [Elite's] misleadingly marketing its XF Flow Forged wheels with the word "forged" has "clear commercial implications" and causes consumers to be "misled."

*Id.* ¶ 16 (quoting Sep. Letter (Doc. 53, Ex. A)). Wheel Pros contended that Elite was engaging in an "unfair and deceptive marketing scheme" and requested that Elite "[c]ease and desist from further promoting, advertising, and / or marketing cast wheels as forged wheels." Sec. Am. Compl. ¶ 16(a), (b); Sep. Letter at 3. If Elite did not comply, Wheel Pros threatened "to take all actions necessary to make itself whole and prevent" further unfair or deceptive marketing. Sep. Letter at 4.

Wheel Pros then sued Elite in Florida state court, alleging that Elite deceptively marketed its cast "XF Flow Forged" line of wheels as forged and asserting claims for false advertising, unfair competition, and violations of the

3

Florida Deceptive and Unfair Trade Practices Act (FDUTPA). Sec. Am. Compl. ¶ 17; *see also* State Ct. Compl. (Doc. 53, Ex. B). The parties ultimately settled the state court action in September 2020. *See* Sec. Am. Compl. ¶ 18; *see also* Settlement Agreement (Doc. 53, Ex. D).

Under the settlement agreement, Elite agreed "to cease using the term 'forged' for its XF Flow Forged line of wheels" and in associated marketing materials. *Id.* ¶ 20(c). Elite also agreed to use stickers to cover up the word "forged" on relevant wheels already produced. *Id.* In turn, Wheel Pros represented that the state case against Elite was " 'the first but not the only action Wheel Pros is undertaking so as to eliminate the use of the term 'forged' in connection with wheels in the wheel industry that Wheel Pros believes were not manufactured in a manner that conforms to . . . uniform nomenclature for 'forged' wheels.' " *Id.* ¶ 20(d) (quoting Settlement Agreement § 1(k)). The settlement agreement gave Elite the right to " 'seek and secure reasonable evidence and certification' that [Wheel Pros] was still working in good faith to eliminate the use of the word 'forged' in the marketing and sale of qualifying wheels . . . in and across the industry." *Id.* ¶ 20(d)(i) (quoting Settlement Agreement § 1(k)). Elite also provided Wheel Pros with information "of other specific industry participants and associated wheel lines" that were not authentically forged wheels. *Id.* ¶ 20(e). That list included "TSW Alloy Wheels"

and its line of "rotary forged" wheels and "Black Rhino Hard Alloys" and its line of "rotary forged" truck wheels. *Id.* (citing Settlement Agreement § 1(k)).

Around three months after the parties signed the settlement agreement, Wheel Pros acquired Just Wheels & Tires Co., doing business as TSW, the seller of Black Rhino's line of "rotary forged" wheels. *Id.* ¶ 23. Wheel Pros then "migrated the Black Rhino brand into [its] own collection of wheel brands" and "directly marketed and sold Black Rhino 'rotary forged' wheels without removing . . . the term 'forged' in the branding, marketing, and sale of that wheel line." *Id.*

Elite contends that Wheel Pros violated the settlement agreement, and that Elite lost revenue and suffered reputational harm by honoring its commitments under the agreement. *Id.* ¶ 27. As a result, Elite brings this lawsuit, alleging four Florida-law causes of action, including fraudulent misrepresentation, *id.* ¶¶ 33–40, negligent misrepresentation, *id.* ¶¶ 41–48, breach of contract, *id.* ¶¶ 49–55, and breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 56–66. Wheel Pros moves to dismiss all counts. MTD at 1–2.

## II.    LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more

5

than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a motion to dismiss, the Court accepts all the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). But "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III.    ANALYSIS

Wheel Pros moves to dismiss each claim against it, arguing that Elite's fraud and contract claims fail for several reasons.

First, Wheel Pros argues that Elite fails to state fraudulent and negligent misrepresentation claims based on omissions in the September 2019 letter because Wheel Pros had no duty to disclose the nonfactual information Elite claims it omitted. MTD at 11–15. Second, Wheel Pros argues that Elite alleges neither how Wheel Pros's affirmative statements were misleading nor how it relied on those statements. MTD at 15–17. Third, Wheel Pros contends that its statements in the 2019 cease-and-desist letter are immunized from tort liability under the *Noerr-Pennington* doctrine. *Id.* at 17–19. Because the first and second bases are enough to conclude that Elite fails to state a claim, I do not address the third.[2]

As for Elite's contract claims, Wheel Pros asserts that the breach of contract claim fails because the settlement agreement provided it "sole discretion" to take certain actions. *Id.* at 19–20. Wheel Pros also argues that Elite failed to plead bad faith, warranting dismissal of its claim for breach of the implied covenant of good faith and fair dealing. *Id.* at 21. Finally, Wheel Pros maintains that both breach claims fail because Elite does not allege a causal link to damages. *Id.* at 21–24. I disagree on each point and so deny the balance of Wheel Pros's motion.

---

[2] Wheel Pros points to no Eleventh Circuit decision applying the *Noerr-Pennington* doctrine (or the First Amendment right to petition more generally) to immunize statements made in a pre-litigation letter from state-law claims of fraudulent and negligent misrepresentation.

**A.    Despite Wheel Pros's Purported Duty to Disclose, Elite Does Not Allege a False Statement (or Omission) of Material Fact**

Elite alleges that the 2019 cease-and-desist letter misrepresented Wheel Pros's views on the propriety of marketing flow-forged wheels as "forged" and omitted Wheel Pros's long-term plan to buy TSW, a manufacturer of wheels like Elite's. On the latter point, Elite contends that Wheel Pros had a duty to disclose its genuine views and one-and-a-half-year out business plans, which Elite sees as "a matter of record" fact. Resp. at 6–9. Wheel Pros responds that, in an arm's-length negotiation, Florida law does not obligate a party to "reveal its business plans (or more pertinently, its 'beliefs') to a competitor whom it was threatening to sue." MTD at 14. And in any event, Wheel Pros says those plans and beliefs are not "objective fact[s]." *Id.* at 13. That point—not the disputed duty to disclose—is fatal to Elite's fraud claims. None of Wheel Pros's alleged misstatements or omissions concern a material fact on which Elite could rely, and therefore Elite's complaint fails to state a claim of negligent or fraudulent misrepresentation.

Under Florida Law, "there are four elements of fraudulent misrepresentation:[3] "(1) a false statement concerning a material fact; (2) the

---

[3] Although styled as a fraudulent misrepresentation claim, Elite's theory likewise resembles a fraudulent inducement claim. *See* Sec. Am. Compl. ¶ 37 ("In making each of these false statements, [Wheel Pros] intended for [Elite] to rely on each such statement, and [Elite] did in fact rely on each and all of these statements in entering into the Agreement at all, and as drafted."); *see id.* ¶ 47 ("[Elite] would not have

representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010); *see also Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n*, 232 So. 3d 502, 505 (Fla. 1st DCA 2017) (listing the same elements for negligent misrepresentation, except "(2) that defendant *should have known* the representation was false" and acted (4) "in *justifiable* reliance upon the misrepresentation" (emphases added)).

In addition to an affirmative misstatement, "[a] defendant's knowing concealment or nondisclosure of a material fact may also support an action for fraud where there is a duty to disclose." *Gutter v. Wunker*, 631 So. 2d 1117, 1118 (Fla. 4th DCA 1994) (per curiam). Notably, "where a party in an arm's length transaction undertakes to disclose information, all material facts must be disclosed." *Id.* at 1118–19; *see also Vokes v. Arthur Murray, Inc.*, 212 So. 2d 906, 909 (Fla. 2d DCA 1968) ("[W]here a party to a transaction owes no duty to

---

agreed to enter into and perform under the [Settlement] Agreement (either at all or as drafted), and its resulting conduct undertaken herein, had [Elite] known the truth regarding each of these actually false statements."). Courts applying Florida law disagree about whether fraudulent misrepresentation and inducement are the same claim. *See NorthStar Reg'l P.S.C. v. InSync Healthcare Sols., LLC*, No. 8:23-CV-02636-KKM-NHA, 2025 WL 1707205, at *4 n.4 (M.D. Fla. June 18, 2025) (collecting cases). Courts viewing them as different claims have concluded that fraudulent inducement requires a showing of *justifiable* reliance. *Id.* (citing *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 209 (Fla. 3d DCA 2003)). This case does not require resolving the disagreement because Elite's claim fails on an element common to both claims.

disclose facts within his knowledge . . . , the law is if he undertakes to do so he must disclose the [w]hole truth."). But whether an affirmative statement or omission, it still "must concern a past or existing fact in order to be actionable." *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168, 172 (Fla. 4th DCA 1994) (per curiam). On the other hand, "[a] successful action for fraudulent misrepresentation may not ordinarily be premised upon a [good faith] promise of future action," "a mere opinion," or a misrepresentation of law. *Id.*; *see Chino Elec., Inc. v. U.S. Fid. & Guar. Co.*, 578 So. 2d 320, 323 (Fla. 1st DCA 1991) ("[I]n the normal business transaction a person should not rely on such ephemeral matters as an opposing party's opinions, judgments, or legal views."). But when the representation "can be viewed as coming from one with superior knowledge of the subject of the statement," the representation should be treated as a fact. *Thor Bear*, 648 So.2d at 172 (citations omitted).

Here, Elite alleges that Wheel Pros failed to disclose that its "identification and acquisition of TSW and its lines of wheels (including . . . the Black Rhino rotary forged wheels . . . marketed using the word 'forged' at the time of the 2019 Letter) was, by its own circa December 2020 admission, a long-term goal." Sec. Am. Compl. ¶ 24. In Elite's view, Wheel Pros needed to disclose its planned acquisition because Wheel Pros "disclos[ed] some information regarding its purported view of whether and how the term 'forged' can and cannot be used in the marketing and sale of wheels in the 2019 Letter," and

10

because Elite otherwise "did not have any access to [Wheel Pros's] marketing and revenue strategies for the flow forged wheel marketplace at the time." Sec. Am. Compl. ¶ 36(a). Ultimately, according to Elite, Wheel Pros's omission "rendered misleading" its purported views on the marketing of forged wheels. Resp. at 7 (citing Sec. Am. Compl. ¶¶ 16, 23 n.13, 35). But none of Wheel Pros's representations or omissions constitute past or existing facts, let alone facts material to the parties' post-litigation settlement agreement.

To start, I look to the September 2019 letter at the center of Elite's allegations. *See* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) ("[W]hen exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.' " (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007))). In the letter, Wheel Pros stated that, after testing Elite's wheels, "[t]he representation that they are 'forged' is misleading, unfair and deceptive" when compared to industry-standard nomenclature. Sep. Letter at 2. And Wheel Pros expressed, "it is easy to see how these unfair acts and deceptive practices have caused and continue to cause Wheel Pros damage by way of decreased sales, lost profits, and lost opportunities" and ultimately "may subject [Elite] to liability under [FDUTPA]." *Id.* at 3.

The first statement represents Wheel Pros's view of whether certain marketing tactics are appropriate, which—even if exaggerated—constitutes a nonactionable opinion. *See Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995) ("[Defendant's] statements that the building was 'a very good building' requiring 'normal type of maintenance,' and 'an excellent deal,' were clearly statements of opinion."). The same goes for Wheel Pros's opinion that "it is easy to see" how Elite's unfair marketing tactics hurt its bottom line. To be fair, whether Wheel Pros lost sales, profits, or opportunities constitutes a matter of historical fact. But Elite does not allege Wheel Pros misrepresented those data points. Instead, Elite claims Wheel Pros believed such marketing was legitimate and withheld information about its go-forward "marketing and revenue strategies for the flow forged wheel marketplace." Sec. Am. Compl. ¶ 36a. But again, Wheel Pros's "statements of opinion and projections about future events, . . . do not constitute statements of existing material fact, . . . a prerequisite for actionable fraud." *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1343 (S.D. Fla. 2011), *aff'd*, 483 F. App'x 568 (11th Cir. 2012) (per curiam). Finally, Wheel Pros's statement that Elite may be liable under FDUTPA represents "a debatable legal opinion on a complex legal matter," and therefore cannot serve as the basis for a fraud claim. *Chino Elec.*, 578 So. 2d at 323.

As for Wheel Pros's alleged omission—its plan to acquire TSW and its line of flow-forged wheels—that too is not an actionable, material fact. Under Florida law, "[a]n action for fraud generally may not be predicated on . . . promises of future action" unless made "with no intention of performing or with a positive intention not to perform." *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001). But Wheel Pros made no promises, either express or implied. So, Elite tries to circumvent this general rule by alleging that Wheel Pros's acquisition of TSW was "a long-term goal" predating the September 2019 letter. Sec. Am. Compl ¶ 24. But "a forward looking statement concerning a person's desire is no less the type of 'ephemeral matter' upon which participants in a normal business transaction are not entitled to rely under Florida law." *Barrett v. Scutieri*, No. 06-21590-CIV, 2007 WL 9703152, at *2 (S.D. Fla. Mar. 19, 2007) (citation omitted), *aff'd*, 281 F. App'x 952 (11th Cir. 2008) (per curiam). And to the extent that Elite suggests Wheel Pros needed to disclose its "true intentions," that too fails because Elite "was not entitled to rely on [Wheel Pros's] stated 'desire' " in the first place. *Id.*

Ultimately—and contrary to Elite's suggestion that Wheel Pros had superior knowledge about the sincerity of its own views—what matters is whether Wheel Pros had superior knowledge about objectively verifiable facts. But Elite does not allege that Wheel Pros was better positioned to know whether Elite's marketing of forged wheels violated Florida law. Simply put,

and in Elite's own words, "the 2019 Letter expressly [took] a position that flow forged wheels may not be marketed using the term 'forged.'" Resp. at 10. Regardless of whether Wheel Pros harbored different views, Wheel Pros's "position" cannot serve as the basis for Elite's fraud claims.

## B.    Elite Fails to Allege how Wheel Pros's Remaining Affirmative Statements were False or Misleading

Along with Wheel Pros's nonactionable "views" (what Elite refers to as omissions), Elite references two affirmative factual statements in the 2019 letter that could theoretically support fraud. Elite says Wheel Pros misrepresented that it "concluded via testing that [Elite's] XF Flow Forged wheels '[were] manufactured by a casting process'" and that "'all wheels manufactured and marketed by Wheel Pros as forged [were] truly forged aluminum alloy products.'" Sec. Am. Compl. ¶ 16 (quoting Sep. Letter at 2–3).[4] Wheel Pros argues that these allegations fall short of the particularity required by Rule 9 because "*nothing* in the complaint supports a conclusion that these statements were false," or explains "*how* Elite relied to its detriment on those statements." MTD at 16. I agree with the first point.

---

[4] If Elite's fraudulent misrepresentation claim were treated as a fraudulent inducement claim, any allegation attacking Wheel Pros's affirmative statements would be a nonstarter. "Florida courts have made clear that no action for fraud in the inducement will lie where the alleged fraud contradicts the subsequent written contract." *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1342 (S.D. Fla. 1999). The parties' Settlement Agreement, consistent with the 2019 letter, recites the two affirmative statements that Elite claims were fraudulent. *See* Settlement Agreement (Recitals) ¶¶ B, D.

Florida fraudulent and negligent misrepresentation claims sound in fraud and so must satisfy Rule 9's heightened pleading standard. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127–28 (11th Cir. 2019). Among other things, Rule 9(b) requires Elite to set forth the precise content of the statements and how they were misleading. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). Elite does not do so, suggesting instead that— when considered with Wheel Pros's non-factual representations—the collective thrust of the 2019 letter is misleading. Resp. at 11–12. In other words, Elite claims Wheel Pros "may not silo individual misrepresentations in the 2019 Letter from one another . . . as part of an unavailing 'technically true' defense." *Id.* at 11. But that contention does not square with Rule 9's heightened standard, which requires a plaintiff to "identify specific facts and state how they were false." *Collins v. Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287, 1294 (M.D. Fla. 2010). Simply put, Elite never alleges that Wheel Pros misrepresented either the results of its testing or the fact that, at least as of September 2019, its wheels were "truly forged aluminum alloy products." Sep. Letter at 2–3.

Because Elite does not allege the false or misleading nature of either factual statement, I need not address Wheel Pros's suggestion that "Elite fails to allege in any plausible manner that it relied upon any statements (or omissions) in the September 2019 letter." MTD at 16; *see also id.* at 16–17

15

(arguing that "the intervening lawsuit . . . forced Elite to change its marketing practices, not anything said in the September 2019 letter"). In sum, with respect to alleged affirmative misrepresentations of fact, Elite fails to plead its fraud claims in conformity with Rule 9(b). *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006). And because Elite has unsuccessfully attempted to plead its fraud claims three times, I dismiss them with prejudice.

### C.    Elite Sufficiently Pleads a Breach of Contract Claim

Wheel Pros argues that Elite fails to state a claim for breach of contract because the relevant Settlement Agreement provision gave Wheel Pros discretion not just in how to root out improper marketing of "forged" wheels, but necessarily whether to do so at all. MTD at 19–20. Because Wheel Pros's argument relies on a poor reading of the contractual provision, it fails.

In Florida, "[a] cause of action for breach of contract has three elements: (1) a valid contract, (2) a material breach, and (3) damages." *Havens v. Coast Fla., P.A.*, 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013). "The intent of the parties governs contract interpretation and that intent is to be determined from the plain language of the agreement and the everyday meaning of the words used." *Burlington & Rockenbach, P.A. v. L. Offs. of E. Clay Parker*, 160 So. 3d 955, 958 (Fla. 5th DCA 2015) (collecting cases). When parties disagree about how to interpret a contract term, and that term is ambiguous, "the Court ought not

16

decide which interpretation is correct at this motion-to-dismiss stage." *Legion Sys., LLC v. Valiant Glob. Def. Servs., Inc.*, No. 820CV02321KKMCPT, 2021 WL 3633592, at *3 (M.D. Fla. Aug. 17, 2021); *BioHealth Med. Lab'y, Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521, 524 (11th Cir. 2017) (holding that "[i]t was improper for the district court to interpret the [ambiguous] contract when considering the motion to dismiss"). But "where the contract or settlement agreement terms are unambiguous, a court may properly consider a motion to dismiss for failure to state a claim for breach." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1312 (S.D. Fla. 2014).

As relevant here, in Section 1(k) Wheel Pros "represents and/or agrees" that "[t]he Complaint is the first but not the only action Wheel Pros is undertaking so as to eliminate the use of the term 'forged' in connection with wheels in the wheel industry that Wheel Pros believes were not manufactured in a manner that conforms to" industry standards. Elite "may seek and secure reasonable evidence . . . from Wheel Pros . . . that its efforts to eliminate the use of the term 'forged' from the wheel industry are ongoing and directed at multiple wheel industry participants besides [Elite]." Settlement Agreement § 1(k). However, "Wheel Pros shall take whatever course of action it deems justified, in its sole discretion, to eliminate the misleading use of the term 'forged' in connection with wheels in the wheel industry that Wheel Pros

believes were not manufactured in a manner that conforms to SAE International's uniform nomenclature for 'forged' wheels." *Id.*

Elite alleges that Wheel Pros "breached its performance obligations and its representations . . . under Section 1(k) of the [Settlement] Agreement . . . by not trying to eliminate or otherwise combat the use of the term 'forged' in the marketing of flow forged wheels by other industry participants besides [Elite]." Sec. Am. Compl. ¶ 53. Not only did Wheel Pros fail to take affirmative steps, Elite says, but also "adopt[ed] the very marketing practice it had represented it was trying to eliminate" by later purchasing TSW, "an entity that manufactured, marketed, and sold multiple flow forged wheel lines using the term 'forged,'" and then by "continuing to market and sell those same flow forged wheel lines . . . for years thereafter." *Id.* ¶ 53(a). Wheel Pros responds that because its obligations in Section 1(k) were discretionary, and because Elite does not allege how Wheel Pros acted "unreasonably" in exercising that discretion, Elite fails to state a breach of Section 1(k). MTD at 19. I disagree.

Under Section 1(k), Wheel Pros agreed and represented that it was "undertaking" actions "so as to eliminate the use of the term 'forged'" from being deceptively marketed in the wheel industry. Settlement Agreement § 1(k). Wheel Pros's discretion is necessarily qualified by this affirmative representation and "the duty to act in good faith," which "limits that party's ability to act capriciously to contravene the reasonable contractual

expectations of the other party." *Dep't of Revenue v. Gen. Motors LLC*, 104 So. 3d 1191, 1198 (Fla. 1st DCA 2012) (quoting *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1098 (Fla. 1st DCA 1999)). Accordingly, Elite plausibly alleges that it reasonably expected Wheel Pros's efforts were "ongoing and directed at multiple wheel industry participants," Settlement Agreement § 1(k), especially where the agreement provides that Elite may "secure reasonable evidence and certification" to that effect. *Id.* At the motion to dismiss stage, "[i]t is not proper . . . to read out such contractual language when [Elite] proffers an interpretation reasonably giving import to that language." *BioHealth Med. Lab'y*, 706 F. App'x at 524; *cf. Gherardi v. Citigroup Glob. Markets Inc.*, 975 F.3d 1232, 1239 (11th Cir. 2020) ("The ordinary rule in contract interpretation is that an interpretation giving reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable." (citation and internal quotation marks omitted)). Elite has therefore sufficiently pleaded what it would have to prove—that Wheel Pros took no action (or took counterproductive action) to eliminate the mislabeling of forged wheels.

Finally, to state a claim, Elite must plead damages flowing from the breach. While a plaintiff must allege more than speculative damages, *A.R. Holland, Inc. v. Wendco Corp.*, 884 So. 2d 1006, 1008 (Fla. 1st DCA 2004) (per curiam), ordinarily "[a] motion to dismiss under Rule 12(b)(6)—which is

concerned with pleading sufficiency under the Federal Rules of Civil Procedure—is the wrong procedural posture through which to contest damages." *Legion Sys., LLC v. Valiant Glob. Def. Servs., Inc.*, No. 820CV02321KKMCPT, 2021 WL 3633592, at *4 (M.D. Fla. Aug. 17, 2021).

On damages, Elite alleges that its "conduct in compliance with the Agreement . . . including placing stickers atop the word 'forged' on its existing inventory of XF Flow Forged wheels and associated packaging and marketing materials; ceasing the manufacture of further XF Flow Forged wheels; and re-purposing the XF Flow Forged brand as XFX Flow branded wheels," paired with Wheel Pros's simultaneous marketing of flow forged wheels, caused Elite to suffer "immediate and substantial drops in revenue" totaling over $4 million. Sec. Am. Compl. ¶¶ 27–28; *see id.* ¶ 55 ("These breaches [of Section 1(k)] directly and proximately damaged [Elite]."). Those allegations are sufficiently specific and non-speculative. Additionally, and contrary to Wheel Pros's argument that none of Elite's purported losses derived from "anything Wheel Pros did or failed to do," MTD at 22, Elite alleges it suffered reputational harm because the marketplace perceived that it "rebranded its flow-forged wheel line due to product quality issues" after "continuing to see several other competitors, including [Wheel Pros], market and sell other flow-forged wheel lines with the term 'forged,' " *id.* ¶ 27(a). Elite thus alleges the requisite causal link between Wheel Pros's breach and its damages.

20

**D.    Elite's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing May Proceed**

In Florida, every contract contains an implied covenant of good faith and fair dealing that prevents a party from engaging in conduct that would frustrate the other's reasonable contractual expectations. *Cox*, 732 So.2d at 1097. When a party defeats those expectations "by a conscious and deliberate act," it violates the implied covenant. *Tiara Condo. Ass'n v. March & McLennan Cos.*, 607 F.3d 742, 747 (11th Cir. 2010) (quoting *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000)). To properly plead a breach of the implied covenant, a plaintiff must also "alleg[e] that an express term of the contract has been breached." *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So.2d 1232, 1234 (Fla. 4th DCA 2001) (per curiam). Once a plaintiff alleges a breach of an express term, the duty of good faith attaches "even where the contractual obligation is one subject to the 'sole discretion' of one of the parties." *Gen. Motors*, 104 So. 3d at 1198 (quoting *Sepe v. City of Safety Harbor,* 761 So.2d 1182, 1184 n.2 (Fla. 2d DCA 2000)).

Here, Elite pleads Wheel Pros's breach of an express term of the Settlement Agreement. Elite further alleges that "[u]nder Section 1(k) of the Agreement, [Wheel Pros] . . . agreed to take action in good faith to continue to try to, 'eliminate' the use of the word 'forged' in connection with the marketing of certain categories of wheel lines," but "breached its implied covenant of good

faith and fair dealing relating to its discretionary powers under the Agreement" by "exercis[ing] that discretion unreasonably and without a proper motive, and in a manner inconsistent with [Elite's] reasonable contractual expectations generally and relating to [Settlement] Agreement Section 1(k) particularly." Sec. Am. Compl ¶¶ 60, 65. Finally, and contrary to Wheel Pros's response that such statements do not allege the requisite bad faith, *see* MTD at 21, Elite alleges that Wheel Pros "directly marketed and sold Black Rhino 'rotary forged' wheels without removing, and in fact adopting/affirming, use" of the disputed term, Sec. Am. Compl. ¶ 23.

Those allegations state a claim for breach of the implied covenant "by a conscious and deliberate act," *Tiara Condo.*, 607 F.3d at 747, and for the reasons explained above, Elite likewise sufficiently pleads damages flowing from that breach, *see* Sec. Am. Compl. ¶¶ 57, 66. Its claim may move forward.

## IV.  CONCLUSION

Elite fails to sufficiently allege its fraudulent and negligent misrepresentation claims but has sufficiently alleged claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Accordingly, the following is **ORDERED:**

1.  Wheel Pros's Motion to Dismiss (Doc. 59) is **GRANTED IN PART** and **DENIED IN PART**.

2.      Counts I (Fraudulent Misrepresentation) and II (Negligent Misrepresentation) of Elite's Second Amended Complaint (Doc. 53) are **DISMISSED with prejudice.**

3.      This Matter will proceed only on Counts III (Breach of Contract) and IV (Breach of the Implied Covenant of Good Faith and Fair Dealing).

4.      The parties are directed to file an amended Case Management Report no later than **September 30, 2025**.

**ORDERED** in Tampa, Florida, on September 23, 2025.

Kathryn Kimball Mizelle
United States District Judge